IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **BRIAN DAVID PRICE,** | Case No. 6:13-cv-01137-PK |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| **CAROLYN W. COLVIN,**<br>Commissioner of Social Security, | |
| Defendant. | |

PAPAK, Magistrate Judge:

Brian Price ("plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II disability insurance benefits ("DIB") under the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision should be affirmed and this case should be dismissed.

Page 1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

On July 27, 2011, plaintiff applied for DIB. Tr. 16, 152-53. After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 16, 116-19, 124-42. On December 12, 2012, an ALJ hearing was held, at which plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 56-90. On February 8, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 16-35. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

## FACTUAL BACKGROUND

Born on June 3, 1967, plaintiff was 43 years old on the amended alleged onset date of disability and 45 years old at the time of the hearing. Tr. 33, 60, 152. Plaintiff graduated from high school and completed two years of college. Tr. 33, 61, 209. He worked previously as a long haul truck driver, concrete mixer driver, waste reclamation driver, and aluminum foundry worker. Tr. 62-65, 83-84, 209. Plaintiff initially alleged disability beginning on August 1, 2008, due to a "failed tendon repair in right small finger," nerve damage, "left shoulder shredded biceps tendon," high blood pressure, degenerative arthritis, post-traumatic stress disorder ("PTSD"), depression, and anxiety. Tr. 152, 208. At the hearing, plaintiff amended his alleged onset date to August 15, 2010, to coincide with "his sobriety date regarding his use of alcohol." Tr. 60.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence of record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the

Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy despite his impairments. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R.§ 404.1566.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 15, 2010, the amended alleged onset date. Tr. 18. At step two, the ALJ determined that plaintiff had the following severe impairments: PTSD, adjustment disorder, obesity, alcohol dependence, alcohol induced mood disorder, chronic rotator cuff tendinosis and partial biceps tear, history of severed right small finger tendon, shin splints, degenerative disc disease of the lumbar spine, left ulnar nerve injury status-post release, hypertension, and peripheral neuropathy of the left calf. *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a), even when including the effects of his substance abuse. He can lift 10 pounds occasionally and less than 10 pounds frequently. He can stand and/or walk for two hours in an eight hour day, and sit for

Page 4 - FINDINGS AND RECOMMENDATION

> six hours in an eight hour work day. He can never climb ladders, ropes or scaffolds, but can frequently stoop, occasionally crawl and never perform overhead reaching with the non-dominant left upper extremity. He can occasionally handle and finge[r] on the left non-dominant side. He is limited to understanding, remembering and carrying out only simple instructions that can be learned in 30 days or less. He can have no public contact and only occasional co-worker contact, with no group tasks.

Tr. 19.

At step four, the ALJ determined that plaintiff could not perform his past relevant work. Tr. 33. At step five, the ALJ found, based on the VE's testimony, that plaintiff could perform a significant number of jobs existing in the national and local economy despite his impairments, such as inspector of small products assembling,[1] optics polisher and inspector, and loader of semiconductor discs. Tr. 33-34. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 34.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) including improper temporal language in the RFC; and (2) relying on testimony from the VE that was inconsistent with the Dictionary of Occupational Titles ("DOT").

I.  Improper Language in the RFC

Plaintiff challenges the ALJ's RFC limitation regarding understanding, remembering, and carrying out only simple instructions that can be learned in 30 days or less. Specifically, plaintiff contends that the temporal limitation inheres to the DOT's Specific Vocational Preparation ("SVP")

---

[1] The title of the position identified by the ALJ's in her decision was actually "small products assembly." Tr. 34. However, the accompanying DOT code, as well as the testimony of the VE, reveals that this was a clerical error and plaintiff does not assert that reversal is warranted as a result of the ALJ's failure to use the full job title for this position. Tr. 34, 85-86; *see generally* Pl.'s Opening Br.; Pl.'s Reply Br.

Page 5 - FINDINGS AND RECOMMENDATION

measure,[2] which "has no place in the function-by-function quantification [that] is the [RFC]." Pl.'s Opening Br. 10-11. In addition, plaintiff asserts that, "[b]y specifying [he] 'should have' such a job, the ALJ effectively instructed the [VE] that notwithstanding [his] mental impairments, she was to testify that [plaintiff] could perform those occupations . . . thereby usurp[ing] the independence of the expert [and] depriving [p]laintiff of basic fairness and due process." *Id.* at 11-12.

The RFC is the maximum a claimant can do despite his limitations. 20 C.F.R § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only restrictions supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As a preliminary matter, plaintiff does not challenge the ALJ's rejection of his subjective symptom statements or the lay witness testimony. *See generally* Pl.'s Opening Br.; Pl.'s Reply Br.; *see also Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (court only considers those "issues which are argued specifically and distinctly in a party's opening brief"). Likewise, plaintiff does not challenge the ALJ's evaluation of the medical evidence or contend that a finding of disability is warranted in this case. *See, e.g.*, Pl.'s Opening Br. 12; Pl.'s Reply Br. 5. Plaintiff therefore does not

---

[2] The SVP categorizes "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appx. C, *available at* 1991 WL 688702; *see also Meissl v. Barnhart*, 403 F.Supp.2d 981, 983 (C.D.Cal. 2005) ("SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED reasoning level ratings") (citation and internal quotations and brackets omitted).

Page 6 - FINDINGS AND RECOMMENDATION

dispute that he is capable of understanding, remembering, and carrying out simple instructions that can be learned in 30 days or less on a sustained basis, such that his argument on appeal represents a technical question regarding what type of language is permissible within the RFC.

Plaintiff's allegation of error is without merit for two reasons. First, the ALJ did not actually refer to the SVP in the RFC. Tr. 19. Instead, the ALJ explained what she meant by "simple instructions" - i.e. the phrase "that can be learned in 30 days or less" describes the instructions' skill and complexity level, or lack thereof. *Id.*; *see also* Pl.'s Reply Br. 3 ("the inclusion of the phrase 'that can be learned in 30 days or less' has the effect of defining what 'simple' means in this case"). Contrary to plaintiff's assertion, there is also no indication that the VE understood the term "simple" in regard to the SVP, as opposed to the GED Reasoning Level. *See* Tr. 84-86. Further, courts within this District routinely employ language in the RFC describing the skill or complexity level of the work to be performed by the claimant. *See, e.g., Ward v. Comm'r Soc. Sec. Admin.*, 2014 WL 1281925, *5 (D.Or. Mar. 27, 2014); *Raegen ex rel. Syzonenko v. Colvin*, 2014 WL 127080, *4 (D.Or. Jan. 13, 2014); *Cornthwaite v. Colvin*, 2013 WL 3368980, *1 (D.Or. July 3, 2013); *see also Temple v. Colvin*, 2014 WL 5023220, *3 (D.Or. Oct. 1, 2014) (affirming the ALJ's inclusion of SVP limitations in the RFC); *Prentice v. Colvin*, 2014 WL 3890386, *2 (D.Or. Aug. 7, 2014) (same); *Johnson v. Colvin*, 2014 WL 1883642, *2 (D.Or. May 8, 2014) (same).

It is axiomatic that the claimant's skill is part of the ALJ's step five consideration, irrespective of whether such information is derived from the RFC, VE, or DOT. *See Hayee v. Astrue*, 2011 WL 3584338, *16 n.19 (E.D.Cal. Aug. 15, 2011) ("[i]n designating the skill requirements of particular occupations [the SSA] uses the materials (such as the DOT) published by the Department of Labor, [which] includes information about jobs (classified by their exertional and skill

Page 7 - FINDINGS AND RECOMMENDATION

requirements) that exist in the national economy") (citations and internal quotations and brackets omitted); *see also* 20 C.F.R. § 404.1568 ("[i]n order to evaluate your skills and to help determine the existence in the national economy of work you are able to do, occupations are classified as unskilled, semi-skilled, and skilled"). Accordingly, the Court finds that RFC restrictions concerning the claimant's skill level are proper where, as here, they are supported by substantial evidence. This is especially appropriate in light of the fact that plaintiff has not cited to a single authority, either from inside or outside this Circuit, reversing the ALJ's decision due to the presence of a skill- or SVP-based restriction in the RFC. *See* Pl.'s Opening Br. 10-12; Pl.'s Reply Br. 3-4.

Second, even assuming that plaintiff established error concerning this issue, remand would nonetheless be inappropriate. The burden of establishing that an error is harmful falls on the party attacking an administrative agency's determination. *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) ("[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm") (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)). Here, plaintiff wholly neglected to address how the ALJ's alleged error in including a time-based limitation in the RFC was harmful and it is not apparent to this Court. If the inclusion of a temporal restriction had any impact, it was to erode plaintiff's occupational base. In other words, such a limitation was favorable to plaintiff because it resulted in a more restrictive RFC.

Finally, to the extent he contends that the ALJ's interaction with the VE violated his rights to basic fairness and due process, plaintiff's argument is unavailing. As described in greater detail below, the ALJ asked the VE at the hearing whether a hypothetical individual with "the same age, education, [RFC,] and past work as [plaintiff had] ... is there other work that might be available?" Tr. 84-85. Plaintiff's contention of error ignores the fact that the ALJ's query was framed in an open

ended manner, such that the VE was free to answer candidly and in accordance with her expertise. As such, there is no indication, as plaintiff implies, that the ALJ coerced the VE into falsely testifying that other work existed in significant numbers in the national and local economy. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (a "presumption of honesty and integrity" exists in those who serve as adjudicators for administrative agencies). Indeed, the Court struggles to conceive of how the ALJ could have posed this question more fairly. For these reasons, the ALJ's decision should be affirmed in this regard.

II.     Inconsistency with the DOT

Plaintiff also asserts that the VE's testimony was inconsistent with the DOT because "[t]he professions identified by the VE either do not exists, or else require reaching, handling, and fingering at least 'frequently.'" Pl.'s Opening Br. 10. The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* Before he or she may rely on the VE's testimony, an ALJ "must first determine whether a conflict exists." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). In accordance with Social Security Ruling 00–4p, the ALJ must ask the VE if his or her testimony is consistent with the DOT. *Id.* at 1152–53. The failure to so inquire is a procedural error. Such an error is harmless if there is no conflict between the VE's testimony and the DOT, "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." *Id.* at 1153-54; *see also* SSR 00–4p, *available at* 2000 WL 1898704.

At the hearing, the ALJ engaged in the following exchange with the VE:

ALJ: If we assume an individual the same age, education, and past work as the

Page 9 - FINDINGS AND RECOMMENDATION

claimant [who] can lift 10 pounds occasionally and 10 pounds frequently, can stand or walk up to two hours in an eight-hour workday and can sit for six or more hours in an eight-hour workday; should never climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; can frequently stoop and occasionally crawl; should not reach overhead with the left upper extremity; and should have a job that requires only understanding, remembering, and carrying out simple instructions that could be learned in 30 days or less. The individual should have no public contact and only occasional coworker contact but no group work with other coworkers . . . Is there other work that might be available?

VE: Yes, your honor . . . I'll give some examples. Your honor, we have inspection of small products assembling [at] the DOT 726.684-110. This work has an SVP level or 2. It's simple, routine. It is unskilled work . . . The numbers in Oregon - 1,400. The national economy is listing 163,000 at this unskilled and sedentary level. [There is also] work in the optical goods field. This is polishing and inspection as well at the sedentary level; the DOT, 713.687-110 . . . In the electronics industry, they have a position called a loader of semiconductor discs, the DOT at 726.687-030[.]

ALJ: [And if] we further assume this individual would be limited to occasional handling and fingering on the left, non-dominant side, would these occupations still be available?

VE: The inspection positions would hold. The position in electronics would not[.]

ALJ: Okay. That was with occasional handling and fingering on the non-dominant [side]. What if the occasional handling and fingering was bilateral?

VE: Bilateral, your honor, is going to rule out unskilled work. There would not be a significant number of opportunities with that [limitation] because basically that speaks to only a third of the day.

ALJ: Were all of you opinions today consistent with the [DOT]?

VE: Yes, your honor.

Tr. 84-86.

Initially, the Commissioner admits that "the optics polisher and inspector job, identified as DOT 713.687-110, is not in the DOT." Def.'s Resp. Br. 7. The Commissioner also acknowledges that, because the VE plainly testified that the loader of semiconductor discs was incompatible with

a limitation to occasional handling and fingering on the left, non-dominant side, the ALJ's reliance on that position was erroneous. *Id.* In response, plaintiff contends that "*Bray* stands for the proposition that any inconsistency in the VE's testimony, if not properly resolved, devalues all testimony offered by the VE," such that this case should be automatically remanded in light of the Commissioner's concessions. Pl.'s Reply Br. 2 (citing *Bray*, 554 F.3d at 1233-36).

The Court disagrees. Plaintiff relies not on the majority opinion in *Bray*, which held that the ALJ committed reversible error at step four by finding that the claimant possessed transferable skills without making specific findings pursuant to Social Security Ruling 82–41, but rather on the concurring opinion that was based on a discrete line of reasoning. *Compare Bray*, 554 F.3d at 1223-26, *with id.* at 1230-36. Even assuming that the concurrence in *Bray* is binding, it is distinguishable in numerous respects. Significantly, according to the concurrence, both the VE and the ALJ in that case promulgated myriad errors at steps four and five, including classifying the claimant's "unsuccessful work attempt" as a grocery clerk as past relevant work; identifying the wrong exertional level and SVP for that job; finding the claimant "could perform work as a sales clerk" but not as a grocery clerk, despite the fact that both jobs entailed performance of "substantially the same" duties; and analyzing the claimant under the wrong portion of the Medical Vocational Guidelines.[3] *Id.* at 1230-36.

In other words, *Bray* does not require reversal of the ALJ's decision simply because the VE's proffered testimony was partially mistaken. Rather, the dispositive inquiry in this context "is whether

---

[3] By contrast, plaintiff points to only one error made by the VE in this case, which was most likely attributable to a mis-transcription of DOT numbers. The Court finds that the VE's failure to accurately recount the DOT code for the position of optics polisher and inspector is insufficient to debase her vocational expertise in its entirety.

Page 11 - FINDINGS AND RECOMMENDATION

a significant number of jobs, as opposed to discrete occupations, have been identified." *Cruise v. Astrue*, 2012 WL 5037257, *10 (D.Or. Sept. 28), *adopted by* 2012 WL 4966462 (D.Or. Oct. 17, 2012) (citations omitted); *see also Bergman v. Astrue*, 2012 WL 1357667, *4 (D.Or. Apr. 19, 2012) (affirming the ALJ's step five finding, even though the claimant pointed to an alleged inconsistency in regard to one of the three jobs identified by the VE, "because there are still a significant number of two other jobs in the national economy").

Here, the Court finds that there is no discord between the VE's testimony regarding the position of inspector of small products assembling and the DOT. Plaintiff is correct that this representative occupation requires frequent - i.e. from one-third to two-thirds of an eight-hour workday - reaching, handling, and fingering. DOT § 726.684-110. Nevertheless, such a requirement is not facially inconsistent with a limitation to no overhead reaching and occasional - i.e. up to one-third of an eight-hour workday - handling and fingering with the left non-dominant side. Nothing precludes plaintiff from reaching, handling, and fingering exclusively with his right, dominant hand and arm. *See* Pl.'s Reply Br. 3 ("[p]laintiff concedes that at least some jobs can be performed with only the dominant hand, so long as that hand is not more impaired than the job requires) (emphasis removed); *see also Bergman*, 2012 WL 1357667 at *4 (VE testifying that an occupation "requiring occasional reaching, handling, [and fingering] could be done one-handed"). Moreover, by dividing the reaching, handling, and fingering requirements for this position as equally as possible between both sides, plaintiff could meet the job requirements articulated in the DOT, while, at the same time, not exceeding his RFC. In fact, this issue was expressly raised before the VE, who reaffirmed that, in accordance with the DOT, a bilateral limitation to occasional handling and fingering would preclude such work, whereas the same limitation, but only in regard to the non-dominant side, would

Page 12 - FINDINGS AND RECOMMENDATION

not. *See* Tr. 86. Thus, not only is there no inconsistency between the VE's testimony and the DOT, but the VE's latter statements confirm that she understood the ALJ's restriction properly and accounted for it in responding that plaintiff was capable of performing the position of inspector of small products assembling.

In sum, the ALJ's error in regard to the representative occupations of optics polisher and inspector and loader of semiconductor discs was harmless because there are still a significant number of positions in the national and local economy that plaintiff can perform despite his impairments.[4] *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). Because the record establishes that the ALJ incorporated all of plaintiff's limitations into the hypothetical posed to the VE, the ALJ's reliance on the VE's testimony was appropriate and supported by substantial evidence. *See Finkenbinder v. Comm'r of Soc. Sec.*, 2013 WL 4828941, *5 (D.Or. Sept. 9, 2013) (affirming the ALJ's step five finding because, although the claimant pointed to alleged inconsistencies with the DOT, "the ALJ provided the VE with a hypothetical incorporating all of [the claimant's] limitations"). The ALJ's step five finding should be affirmed.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED. A final Judgement should be prepared.

---

[4] Namely, the VE testified that 1,400 local and 163,000 national inspector of small products assembling jobs existed. Tr. 85-86; *see also Cruise*, 2012 WL 5037257 at *10 ("[b]etween 1,000 and 1,500 jobs in the regional economy constitutes a significant number for purposes of the SSA") (citations omitted); *Lawrence v. Colvin*, 2014 WL 3512603, *9 (D.Or. July 10, 2014) (noting that as few as 25,000 jobs in the national economy and 490 jobs in the regional economy have qualified as significant at step five).

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this Findings and Recommendation is filed. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 22nd day of October, 2014.

/s/ Paul Papak
Paul Papak
United States Magistrate Judge